IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

CARL LAMONT BRANDON,          )
                              )
          Petitioner,         )
                              )
     v.                       )          CV 116-132
                              )           (Formerly CR 112-253)
UNITED STATES OF AMERICA,      )
                              )
          Respondent.         )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Carl Lamont Brandon filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

### A.     Pretrial Proceedings

In an indictment returned on December 6, 2012, a grand jury in the Southern District of Georgia charged Petitioner in one count with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. United States v. Brandon, CR 112-253, doc. no. 1 (S.D. Ga. Dec. 6, 2012) (hereinafter "CR 112-253"). The charge carried a possible sentence of imprisonment of not more than ten years. Id., doc. no. 4. Pursuant to the Criminal Justice Act, the Court appointed attorney Andrew Alexander Murdison to represent Petitioner. Id., doc. nos. 9, 17.

After the resolution of all pretrial motions and the grant of one trial continuance, Chief United States District Judge J. Randal Hall set the matter for a jury trial on August 12, 2013. Id., doc. nos. 10-15, 19, 22, 25, 26. On August 2, 2013, Petitioner filed a motion to suppress statements allegedly made to the arresting deputy and a parole officer, as well as a Waiver of Final Hearing form executed in relation to Petitioner's parole status. Id., doc. no. 30. In signing the waiver, Petitioner admitted he had violated the terms of his parole by possessing the firearm for which he had been federally indicted. Id., doc. no. 30-2. When defense counsel showed the Waiver to Petitioner in preparation for filing the motion to suppress, Petitioner stated for the first time he recalled telling the parole officer he (1) had seen a young man at a family birthday party with a gun in his pants; and (2) told the young man to take the gun away from the party. Id., doc. no. 99-1, Murdison Decl. ¶ 5.

In response to the motion, the government agreed not to use the Waiver in its case-in-chief against Petitioner. Id., doc. no. 32. However, it reserved the right to use the Waiver for impeachment purposes. Id. The government also agreed not to introduce any statements to the parole officer in its case-in-chief, but reserved the right to use those statements in rebuttal. Id., doc. no. 62-2. Further, the government informed defense counsel it had issued a subpoena to the parole officer to bring to trial any documents she had prepared after Petitioner's arrest on the charges at issue. Id. The government stated its intention to provide any such documents prior to the parole officer's testimony. Id. At a hearing, Petitioner did not present evidence or argument concerning statements to his parole officer, and Chief Judge Hall suppressed Petitioner's alleged statement to the arresting deputy that he "took the gun from a friend." Id., doc. no. 38, ¶ 5; doc. no. 42, pp. 27-29.

**B.     Trial**

**1.     Government's Case-In-Chief**

The government presented evidence Petitioner shoplifted headphones from an Augusta-area Walmart on October 8, 2012, fled in his car, and was apprehended in the parking lot of a daycare center after a short, high-speed chase with Columbia County deputy sheriffs.  CR 112-253, doc. no. 65, pp. 88-90, 98-100, 121 ("Trial Tr.")  The deputies found a loaded, 9 mm pistol hidden in a CD case under the front passenger seat of the otherwise clean car in which Petitioner fled, a car confirmed by a records check on the scene of the arrest to be owned by Petitioner.  Id. at 101, 103, 115-16, 123, 125.  One of the deputies on the scene of the arrest testified as to his experience with felons trying to hide weapons in locations in a car, like a CD case, where police might be unlikely to look, or to have a more difficult time finding an object.  Id. at 123-24.

The deputies found the stolen headphones on a grass island in the same parking lot where the car chase ended.  Id. at 115, 131.  Petitioner, a convicted felon, was arrested at the scene.  Id. at 99, 108.  A female acquaintance of Petitioner's came to the scene to take possession of the car.  Id. at 111-12.  No one ever claimed the firearm.  Id. at 128.

**2.     Petitioner's Evidence**

Once defense counsel announced his intention to call witnesses, the government produced to him the documents the parole officer brought to court pursuant to the government-issued subpoena.  Id. at 155-57, 162; doc. no. 62, p. 8.  The documents included the parole officer's notes from an October 10, 2012 interview with Petitioner in which he:

> admit[ted] that he had been in possession of the handgun in question. [Petitioner] stated that he had been at his nieces birthday party on 10/7/12 and several young men were there drinking.  he noticed one of them had a handgun in his waistband.  the subject stated he took the handgun from the young man

and placed it in this car as he did not want this young man to make the same mistake he had made in his younger days. the subject stated he had forgotten all about the gun until the Deputy located it under the seat in his car.

Doc. no. 62-3. The parole officer's notes were the first indication to defense counsel that Petitioner had admitted knowingly possessing the gun, in contradiction of Petitioner's previous explanation that he had instructed a young man with a gun in his pants to take it away from the family birthday party. Murdison Decl. ¶¶ 5, 6.

Petitioner called two of his relatives as witnesses, a seventeen-year old nephew and a fifteen-year old niece. The nephew testified he saw a young man named Martez at a family birthday party the day before Petitioner's arrest. Trial Tr. 139-48. He thought he saw Martez open the door of Petitioner's car and put what looked like a gun under the seat, but the nephew admitted he had no idea whether Petitioner knew Martez put the gun in the car. Id. at 147. Petitioner's niece testified Martez, the father of her baby, and Petitioner met for the first time at the birthday party. Id. at 149-51. Martez died prior to Petitioner's trial. Id. at 150.

### 3.    Government's Rebuttal Evidence

When the defense rested, the government announced its intention to call Petitioner's state parole officer in rebuttal. Id. at 153. Defense counsel argued the government should not be allowed to call the parole officer to testify about any statements by Petitioner may have made to her because, as a result of the prior motion to suppress, the government had agreed not to use Petitioner's admission on a Waiver of Final Hearing or statements made to the parole officer in its case-in-chief. Id. at 153-55. The government countered (1) it had reserved the right to use information from the parole officer as impeachment or rebuttal; and (2) defense counsel never particularized a motion to suppress the parole officer's statement

that Petitioner admitted taking the gun from a young man at the family birthday party, a statement which contradicted the nephew's testimony Martez put the gun in Petitioner's car. Id. at 156.  Chief Judge Hall agreed the prior motion to suppress did not cover Petitioner's statement to his parole officer.  Id. at 159.

Chief Judge Hall also rejected defense counsel's belated oral motion to suppress the parole officer's statement.  Id. at 159-65.  He pointed out it was obvious from the prior motion to suppress that the defense was aware a conversation with the parole officer had taken place.  Chief Judge Hall also agreed that even if the specific document memorializing the conversation was produced at trial pursuant to a subpoena, Petitioner could have shared the contents of the conversation to which he was a party, thereby allowing counsel an opportunity to move for suppression if warranted.  Id. at 160-62.  Thus, the parole officer was allowed to testify as a rebuttal witness, and she recounted Petitioner's statement memorialized in her notes that Petitioner took the gun from a young man at his niece's birthday party and forgot he left it in his car.  Id. at 166-67.

### 4.     Verdict

The jury returned a guilty verdict thirty-three minutes after starting its deliberation. Id. at 207-08.

### C.     Sentencing

The United States Probation Office prepared the Presentence Investigation Report (PSI), which provided for a Total Offense level of twenty-four, a Criminal History Category of IV, and a Guidelines imprisonment range of seventy-seven to ninety-six months.  PSI ¶¶ 20, 44.  Because Petitioner had at least one felony conviction for a crime of violence, pursuant to U.S.S.G. § 2K1.1(a)(4), his base offense level was twenty.  PSI ¶ 11.  That base

level increased by two points pursuant to U.S.S.G. § 3C1.1 for obstruction of justice and by another two points pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight. PSI ¶¶ 15, 16. The felon in possession of a firearm charge carries a statutorily authorized maximum sentence of imprisonment of ten years. 18 U.S.C. §§ 922(g) and 924(a)(2); PSI ¶ 43.

Petitioner objected to the two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1. CR 112-253, doc. no. 82, pp. 3-4 ("Sent. Tr."). The enhancement was premised on the trial testimony of Petitioner's nephew, who said he had seen Martez put what looked like a gun under Petitioner's seat. Id. at 24, 27; PSI ¶ 7. The parole officer testified Petitioner had admitted taking the gun from a young man and forgetting he put it in his car. Sent. Tr. 26-27; PSI ¶ 7. Petitioner argued the nephew did not commit perjury because there was insufficient evidence he willfully gave false testimony. PSI Add., pp. 2-5.

The government introduced two exhibits at sentencing in support of the enhancement: (1) the written incident report of the arresting deputy which memorialized Petitioner's admission he had taken the firearm from a friend, and (2) the parole officer's notes memorializing her jail interview with Petitioner wherein he admitted taking the firearm from a young man at his niece's birthday party. Sent. Tr. 31-32, 39. After hearing lengthy argument from both sides, Chief Judge Hall (1) overruled Petitioner's objection, as well as the government's objection concerning not labeling Petitioner an Armed Career Criminal, (2) adopted the findings of the PSI, and (3) sentenced Petitioner above the advisory Guidelines range to the statutory maximum term of 120 months in prison. Id. at 41-44, 86; CR 112-253, doc. no. 75.

**D.     Motion for New Trial**

Petitioner filed a motion for new trial based on two grounds.  CR 112-253, doc. no. 62.  First, Petitioner argued Chief Judge Hall erred in denying his challenge during jury selection pursuant to <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  <u>Id.</u> at 10-18.  Second, and relevant to this § 2255 proceeding, Petitioner argued the testimony of the parole officer presented by the government should have been excluded.  <u>Id.</u> at 18-25.  In rejecting Petitioner's arguments concerning the admissibility of the testimony of the parole officer, Chief Judge Hall relied on the untimeliness of the motion and Petitioner's failure to demonstrate good cause for waiving the argument.  CR 112-253, doc. no. 87, pp. 13-15.  In particular, Chief Judge Hall emphasized that even if Petitioner disputed the content of the conversation about which the parole officer testified, "he was certainly aware that *a* conversation took place," as evidenced by his motion to suppress statements made to the officer in connection with signing the Waiver of Final Hearing form.  <u>Id.</u> at 14.  Petitioner's failure to relay the content of his conversation at the jail with his parole officer to his attorney in a timely fashion did not form a valid basis for granting a new trial.  <u>Id.</u> at 15.

**E.     Direct Appeal**

On appeal, Petitioner argued Chief Judge Hall abused his discretion in (1) denying Petitioner's <u>Batson</u> challenge, and (2) denying the motion to suppress and admitting the testimony of the parole officer concerning Petitioner's admission of taking the gun from a young man and putting it in the car, where it was discovered during his arrest for shoplifting.  <u>United States v. Brandon</u>, 636 F. App'x 542, 544 (11th Cir.) (*per curiam*), *cert. denied*, 136 S. Ct. 2423 (U.S. 2016).  The Eleventh Circuit rejected Petitioner's arguments and affirmed the conviction.  <u>Id.</u>  Specific to the parole officer's testimony, the Eleventh Circuit ruled the

timing of the government's disclosure of the parole officer's notes was neither a violation of Federal Rule of Criminal Procedure 16 or the Jencks Act, 18 U.S.C. § 3500. Id. at 546-47. Furthermore, the Eleventh Circuit determined Chief Judge Hall acted within his discretion to refuse to consider the untimely motion to suppress the parole officer's testimony because Petitioner failed to show cause for its consideration, particularly because the defense knew prior to trial that some conversation between Petitioner and the parole officer had taken place. Id. at 547.

**F.      § 2255 Motion**

Petitioner now asserts eight grounds for relief in his § 2255 motion:

(1)      After Johnson v. United States, 576 U.S.-, 135 S. Ct. 2551 (2015), none of his prior convictions qualify as "crimes of violence," and therefore his base offense level enhancement under U.S.S.G. § 2K2.1(a)(4) is invalid;

(2)      After Johnson v. United States, *supra*, his enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight is unconstitutionally vague, violative of due process, and therefore invalid;

(3)      Trial counsel provided constitutionally ineffective assistance by failing to have Petitioner's statements to the parole officer suppressed;

(4)      Petitioner's rights against self-incrimination were violated by the state parole officer who spoke to Petitioner without first advising him of rights under Miranda v. Arizona, 384 U.S. 436 (1966), and therefore trial counsel provided constitutionally ineffective assistance by failing to successfully suppress the incriminating statements to the officer;

(5)      After Henderson v. United States, 575 U.S. -, 135 S. Ct. 1780 (2015), his conviction is invalid because mere constructive possession of a gun is insufficient to establish guilt pursuant to 18 U.S.C. § 922(g);

(6)      After Molina-Martinez v. United States, 578 U.S. -, 136 S. Ct. 1338 (2016), Petitioner is entitled to re-sentencing because the PSI calculated an incorrect Guidelines range;

(7)      After United States v. Johnson, 352 F.3d 146 (5th Cir. 2003), Petitioner's enhancement under U.S.S.G. § 3C1.1 for obstruction of justice is invalid; and

(8)     Appellate counsel provided constitutionally ineffective assistance by failing to raise the preceding seven issues.

(See generally doc. no. 1.)

## II.     DISCUSSION

### A.     No Evidentiary Hearing Required

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required.  Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015).

When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008). Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner Procedurally Defaulted Grounds One, Two, Five, Six, and Seven.

#### 1. Procedural Bar to § 2255 Review and the Exceptions

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987). Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per*

*curiam*). However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. <u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003).

Therefore, other than an ineffective assistance of counsel claim, for the Court to review a claim otherwise barred in collateral proceedings, Petitioner must show both cause and actual prejudice from the error of which he complains. <u>Brown</u>, 720 F.3d at 1333; <u>Montano</u>, 398 F.3d at 1280. "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. <u>See</u> <u>Weeks v. Jones</u>, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991)). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

<u>Montano</u>, 398 F.3d at 1280 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). Actual innocence "applies to a severely confined category: cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." <u>McQuiggin v. Perkins</u>, 569 U.S. -, 133 S. Ct. 1924, 1933 (2013) (internal quotations omitted) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)); <u>see also</u> <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011).

**2. Grounds One, Two, Five, Six, and Seven Are Procedurally Defaulted Because Petitioner Did Not Raise Them on Direct Appeal.**

On direct appeal, Petitioner argued Chief Judge Hall abused his discretion in (1) denying Petitioner's <u>Batson</u> challenge, and (2) denying the motion to suppress and admitting the testimony of the parole officer concerning Petitioner's admission of taking the gun from a young man and putting it in the car, where it was discovered at the time of Petitioner's arrest. <u>Brandon</u>, 636 F. App'x at 544. Thus, as the claims now raised in Grounds One, Two, Six, and Seven relate to Petitioner's sentencing but were not raised on direct appeal, they are barred from review in these collateral proceedings. Likewise, because the claim raised in Ground Five regarding constructive possession of a gun improperly forming the basis for Petitioner's conviction could have been, but was not, raised on direct appeal, it is barred from review in these collateral proceedings.

Accordingly, for Petitioner to avoid the bar to these claims, he must satisfy the cause and actual prejudice standard set forth above, or he must establish actual innocence. Petitioner makes two attempts to satisfy these exceptions, but neither one is successful. First, Petitioner claims without explanation that the "law of the Circuit foreclosed" these arguments. Even if the Eleventh Circuit had not reached the same conclusions as the Supreme Court cases cited in support of Petitioner's Grounds Five and Six, Petitioner points to nothing that *prevented* him from raising what may have seemed at the time to be a losing argument. After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." <u>Prost v. Anderson</u>, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.). Indeed, successfully challenging circuit precedent all the way to the Supreme Court is, in fact, the reward to litigants who "took the trouble to challenge adverse circuit precedent." <u>Id.</u> at 590-91. In any

event, as discussed in detail below in Part II(C)(3) & (4), neither Ground Five or Six has merit.

Second, as noted above, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings, Massaro, 538 U.S. at 509, and may serve as "cause" for failing to raise an otherwise procedurally barred claim. Murray, 477 U.S. at 488. Petitioner has, therefore, cloaked all of his otherwise procedurally barred issues under the auspices of an ineffective assistance of counsel claim by alleging in Ground Eight that his appellate counsel was ineffective for failing to raise Petitioner's Grounds One through Seven. As described in detail below in Part II(C), Petitioner cannot show he received ineffective assistance of counsel, and therefore, he cannot establish the necessary cause and actual prejudice to excuse his procedural default.

Finally, Petitioner cannot satisfy the demanding actual innocence standard not only because he fails to present any new reliable evidence showing it is more likely than not that no reasonable juror would have convicted him, McQuiggin, 133 S. Ct. at 1933, but also because by his own admission on the Waiver of Final Hearing form, Petitioner admitted he possessed the firearm as a felon. CR 112-253, doc. no. 30-2.

## C.     Under **Strickland v. Washington**, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro, 538 U.S. at 505; United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong

presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." Gordon, 518 F.3d at 1301. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

**1.** **Because the Supreme Court's Decision in <u>Johnson</u> Does Not Apply to the Sentencing Guidelines, There Is No Merit to Petitioner's Claims in Grounds One and Two that Guidelines Enhancements Were Improperly Applied to His Sentence.**

In <u>Johnson</u>, the Supreme Court found the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), to be void for vagueness and a violation of the Constitution's guarantee of due process. 135 S. Ct. at 2563. The "residual clause" of the ACCA violent felony definition includes a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). However, on March 6, 2017, the Supreme Court decided the advisory Guidelines are not subject to a due process vagueness challenge, and therefore, the residual clause of U.S.S.G. § 4B1.2(a) is not void for vagueness. <u>Beckles v. United States</u>, 137 S. Ct. 886, 897 (U.S. 2017). Thus, the Supreme Court affirmed Eleventh Circuit precedent that <u>Johnson</u> does not apply to career offender enhancements under the Guidelines. <u>See</u> <u>United States v. Matchett</u>, 802 F.3d 1185, 1194 (11th Cir. 2015).

**(a)** **Ground One**

Petitioner claims in Ground One that after <u>Johnson</u>, his base offense level under U.S.S.G. § 2K2.1(a)(4)(A) is invalid because none of his prior convictions qualify as a "crime of violence." His claim fails for two reasons. First, <u>Johnson</u> does not apply to Petitioner because his sentence was not based on application of the ACCA's residual clause. Both the Supreme Court and the Eleventh Circuit have determined <u>Johnson</u> does not apply to enhancements under the Guidelines, and thus Petitioner is not entitled to be resentenced without application of § 2K2.1. <u>Beckles</u>, 137 S. Ct. at 891, 897; <u>Matchett</u>, 802 F.3d at 1194; <u>see also</u> <u>United States v. Kirk</u>, 636 F. App'x 548, 550 (11th Cir. 2016) (*per curiam*)

("[N]othing in <u>Johnson</u> precludes the application of the offense level increases or enhancements in the advisory sentencing guidelines.").

Second, even if <u>Johnson</u> did apply, Petitioner has more than the required one prior conviction qualifying as a "crime of violence" to satisfy the requirements of § 2K2.1(a)(4)(A). According to the PSI, Petitioner has a prior felony conviction for both aggravated assault and armed robbery. PSI ¶ 22. Each conviction was an enumerated crime of violence under the Guidelines at the time of Petitioner's sentencing, regardless of the residual clause. U.S.S.G. § 4B1.2. cmt. n.1 (Nov. 1, 2013) ("'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offense, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.") .

Because there is no merit to this claim, Mr. Murdison did not provide ineffective assistance of counsel by failing to raise such a challenge. See <u>Strickland</u>, 466 U.S. at 688, 694; <u>Nyhuis</u>, 211 F.3d at 1344.

### (b) Ground Two

Petitioner claims in Ground Two that after <u>Johnson</u>, his enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight is unconstitutionally vague, violative of due process, and therefore invalid. Petitioner likens the language in this section requiring a two-level increase for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the court of fleeing from a law enforcement officer" to the language of the invalidated residual clause of the ACCA. This claim also fails for two reasons.

First, as described in part (a), *supra*, <u>Johnson</u> does not apply to Guidelines enhancements. See <u>Beckles</u>, 137 S. Ct. at 891, 897; <u>Matchett</u>, 802 F.3d at 1194. Second, Petitioner never argues that he did not engage in the conduct that resulted in the application

of the enhancement to his sentence, namely, accelerating his car at a high-rate of speed through a parking lot, down a two-lane road, and past a daycare center. Trial Tr. 98-99, 121; PSI ¶ 5. Because Petitioner's conduct fell within the actions clearly proscribed by the Guidelines, he "cannot complain of the vagueness of the law as applied to the conduct of others." Holder v. Humanitarian Law Project, 561 U.S. 1, 20 (2010) (citation omitted).

Because there is no merit to this claim, Mr. Murdison did not provide ineffective assistance of counsel by failing to raise such a challenge. See Strickland, 466 U.S. at 688, 694; Nyhuis, 211 F.3d at 1344.

### 2. Because Mr. Murdison Performed in an Objectively Reasonable Manner Based on the Information Provided by Petitioner, There Is No Merit to Grounds Three and Four.

Petitioner claims in Grounds Three and Four he received constitutionally ineffective assistance of counsel because Mr. Murdison failed to move to suppress Petitioner's inculpatory, custodial statements to his parole officer. Petitioner claims Mr. Murdison failed to sufficiently investigate the circumstances of Petitioner's post-arrest conversation with his parole officer. By defense counsel failing to move to suppress the admission Petitioner had taken the gun away from an attendee at the party, put it in his car, and forgotten about it, Petitioner claims his conviction was obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Importantly, Petitioner never states he actually told Mr. Murdison of the inculpatory nature of his discussion with his parole officer prior to the point at trial when the government announced its intention to call the officer in rebuttal. (Doc. no. 1, pp. 7-9.)

The record reveals Petitioner's custodial statements after his arrest were hotly contested. Indeed, Mr. Murdison successfully suppressed Petitioner's confession to the

arresting deputies and obtained the government's concession not to use statements made to the parole officer in its case in chief. CR 112-253, doc. nos. 41, 42. In preparing his trial strategy, Mr. Murdison asked Petitioner about conversations in which he discussed the events forming the basis for his federal prosecution, and Petitioner disclosed only his discussions with the deputies who arrested him. Murdison Decl. ¶ 2.

When Mr. Murdison received Petitioner's parole file in discovery and found the Waiver of Final Hearing in which Petitioner admitted violating his parole by possessing the gun, he prepared a motion to suppress statements to the arresting deputy, the Waiver, and any statements to the parole officer. Id. ¶¶ 3-4; CR 112-253, doc. no. 30-2. Only when Mr. Murdison showed the Waiver to Petitioner did Petitioner reveal for the first time that he had discussed his arrest with his parole officer. However, Petitioner told Mr. Murdison he informed his parole officer that he had seen a young man carrying the gun at a family birthday party and instructed him to take it away from the party. Murdison Decl. ¶ 5. This version of the exculpatory discussion with the parole officer was consistent with the trial strategy Mr. Murdison had planned, namely, calling two witnesses to testify they had been at the same family birthday party and having one witness testify he saw the young man put something that looked like a gun in Petitioner's car. Trial Tr. 139-51.

Only when Mr. Murdison received documents during trial, showing the parole officer memorialized a conversation wherein Petitioner admitted possessing the gun, did Mr. Murdison have any reason to believe an inculpatory statement to the parole officer needed to be challenged. Murdison Decl. ¶ 6. By mid-trial, the time for filing a motion to suppress had expired, and Chief Judge Hall ruled there was no good cause for allowing a belated

motion. Trial Tr. 159-65. The Eleventh Circuit found no error with the exercise of that discretion to refuse the belated motion. <u>Brandon</u>, 636 F. App'x at 547.

Petitioner knew he had a conversation with his parole officer and simply chose not to reveal the inculpatory contents to counsel, relying instead on his exculpatory version of events. Indeed, had Petitioner's conversation with the parole officer actually been as Petitioner described it to counsel, the officer's testimony would have corroborated the testimony of the two defense witnesses and strengthened Petitioner's defense. Even now in these collateral proceedings, Petitioner does not assert he told Mr. Murdison about the inculpatory statement to his parole officer any time prior to trial.

Trial strategy is entitled to significant deference. <u>Strickland</u>, 466 U.S. at 691; <u>Waters</u>, 46 F.3d at 1512; <u>Devier</u>, 3 F.3d at 1450. Petitioner has not demonstrated Mr. Murdison's trial strategy was objectively unreasonable based on the information available to him.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

<u>Strickland</u>, 466 U.S. at 691.

The only sworn averment before the Court is Mr. Murdison's affidavit detailing Petitioner's ever-changing recollection of his conversations about the events forming the basis for his prosecution. First, Petitioner said he only discussed the incident with the arresting deputies. Then, once discovery revealed the contents of a parole file containing a Waiver of Final Hearing in which Petitioner admitted violating his parole by possessing the gun, Petitioner suddenly remembered a conversation with his parole officer. But according to Petitioner, the conversation was exculpatory and conveniently supportive of the trial

strategy Mr. Murdison had crafted based on the information available to him. Then, when mid-trial, additional evidence surfaced showing Petitioner's conversation with the parole officer was not as Petitioner had recounted to Mr. Murdison, counsel was left to scramble to try to convince the Court to hear a belated motion to suppress.

It was entirely within Petitioner's control to provide complete and truthful information to counsel about his conversations with his parole officer. That Petitioner chose not to do so cannot now form a valid basis for claims of ineffective assistance of counsel. Petitioner fails to show that no competent counsel would have followed the trial strategy selected by Mr. Murdison, and the Court finds counsel's actions were objectively reasonable in light of the information provided to him by Petitioner. See Strickland, 466 U.S at 691.

Even if Petitioner had established deficient performance by Mr. Murdison with respect to Grounds Three and Four – which he has not – he would still not be entitled to relief because he has not shown prejudice. The proof of guilt on the felon in possession charge did not rely solely on the testimony of the parole officer. To the contrary, sheriff's deputies testified that after a high-speed chase, they found a loaded, 9 mm pistol hidden in a CD case under the front passenger seat of the otherwise clean car in which Petitioner fled, a car confirmed by a records check on the scene of the arrest to be owned by Petitioner. Trial Tr. 99, 101, 103, 115-16, 123, 125. One of the deputies on the scene of the arrest testified as to his experience with felons trying to hide weapons in locations in a car, like a CD case, where police might be unlikely to look, or to have a more difficult time finding an object. Id. at 123-24. No one ever claimed the firearm. Id. at 128.

In contrast, Petitioner's witnesses were two relatives who testified merely that a person who died before trial had been seen putting what looked like a gun in Petitioner's car.

Id. at 139-50. Even then, Petitioner's nephew admitted he had no idea whether Petitioner knew the gun had been put in the car. Id. at 147.

In sum, Petitioner has not shown prejudice from Mr. Murdison's objectively reasonable choices in crafting a defense strategy based on the information provided to him by Petitioner, and Petitioner is not entitled to relief on Grounds Three and Four.

### 3. Henderson v. United States Does Not Invalidate Petitioner's Conviction.

In Ground Five, Petitioner claims that after Henderson v. United States, his conviction is invalid because the government proved "constructive" rather than "actual" possession of the firearm discovered in his vehicle upon arrest. According to Petitioner, because "it was noted that [he] had no knowledge that the firearm was inside the vehicle," the evidence established only constructive possession of the firearm, and therefore he is "actually innocent" of violating § 922(g). (Doc. no. 1, p. 10.) This argument fails because it is based on an incorrect interpretation of Henderson.

In Henderson, the Supreme Court explained, "[A]ctual possession exists when a person has direct control over a thing," and "[c]onstructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." Henderson, 135 S. Ct. at 1784. The Supreme Court went on to say § 922(g) proscribes possession in every form, "encompassing what the criminal law recognizes as 'actual' and 'constructive' possession alike." Id.

Petitioner asserts "it was noted [during trial] that [he] had no knowledge that the firearm was inside the vehicle," (doc. no. 1, p. 10), perhaps implying that without knowledge, he could not have had power or intent to control the gun. However, as noted Part II(C)(2), the government presented contrasting evidence that Petitioner did know the gun was

present. "[T]he jury has exclusive province over [the credibility] determination." United States v. Johnson, 645 F. App'x 954, 961 (11th Cir. 2016) (citing United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999)); see also Castle v. Sangamo Weston, Inc. 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact."). Thus, Petitioner's conviction is valid even after Henderson. See also United States v. Little, -F.3d-, No. 16-10664, 2017 WL 3205269, at *3 (11th Cir. July 28, 2017) (recognizing government can establish possession via proof of either actual or constructive possession and applying Henderson definitions to conclude demonstration of constructive possession sufficient to affirm conviction).

Because there is no merit to this claim, Mr. Murdison did not provide ineffective assistance of counsel by failing to raise such a challenge. See Strickland, 466 U.S. at 688, 694; Nyhuis, 211 F.3d at 1344.

### 4. Petitioner Is Not Entitled to Re-Sentencing after Molina-Martinez v. United States.

Petitioner claims in Ground Six his criminal history category and offense level were improperly calculated under the Guidelines, and therefore Chief Judge Hall committed plain error at sentencing, entitling him to re-sentencing under Molina-Martinez. (Doc. no. 1, p. 10.) There is no merit to this argument.

In Molina-Martinez, the Supreme Court ruled, "When a defendant is sentenced under an incorrect Guidelines range – whether or not the defendant's ultimate sentence falls within the correct range - the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." 136 S. Ct. at 1345. The case explains how a defendant can establish on direct appeal that an incorrect sentence amounts to plain error entitling him to re-sentencing without an additional showing of a reasonable probability

23

that but for the error, the outcome of the proceedings would have been different. <u>Id.</u> at 1343-46. In these collateral proceedings, Petitioner has not shown his sentence was incorrect. Indeed, as discussed herein, Petitioner's objections to the Guidelines calculation are meritless, and thus <u>Molina-Martinez</u> has no applicability.

Because there is no merit to this claim, Mr. Murdison did not provide ineffective assistance of counsel by failing to raise such a challenge. <u>See</u> <u>Strickland</u>, 466 U.S. at 688, 694; <u>Nyhuis</u>, 211 F.3d at 1344.

### 5. An Enhancement under U.S.S.G. § 3C1.1 for Obstruction of Justice Was Properly Included in Petitioner's Guidelines Calculation.

Citing non-binding precedent out of the Fifth Circuit, <u>Johnson v. United States</u>, 352 F.3d 146 (5th Cir. 2003), and providing no factual or legal detail, Petitioner argues in Ground Seven that an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 should not have been included in his Guidelines calculation.[1] Petitioner's argument fails for two reasons, in addition to the reason previously explained in Part II(B)(1), *supra*, that an alleged misapplication of the advisory Guidelines is not reviewable on collateral attack.

First, Petitioner provides absolutely no detail to his argument for the Court to evaluate. Conclusory allegations are simply insufficient to warrant relief. <u>McFarland v. Scott</u>, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face.")

---

[1] U.S.S.G. § 3C1.1 provides:

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Second, Mr. Murdison did challenge the obstruction of justice enhancement at sentencing. The enhancement was premised on the trial testimony of Petitioner's nephew, who said he had seen a now-deceased young man put what looked like a gun under Petitioner's seat. Sent. Tr. 24, 27; PSI ¶ 7. Petitioner argued the nephew did not commit perjury because there was insufficient evidence he willfully gave false testimony. PSI Add., pp. 2-5. In support of the enhancement, the government introduced two exhibits: (1) the written incident report of the arresting deputy which memorialized Petitioner's admission he had taken the firearm from a friend, and (2) the parole officer's notes memorializing her jail interview with Petitioner wherein he admitted taking the firearm from a young man at his niece's birthday party. Sent. Tr. 31-32, 39.

After lengthy argument from both sides, Chief Judge Hall overruled Petitioner's objection, applied U.S.S.G. § 3C1.1, citing Petitioner's role in the presentation of his nephew's testimony despite Petitioner's admission to two law enforcement sources that he possessed of the firearm. Id. at 41-43. The record shows the obstruction of justice enhancement was correctly applied, and Petitioner is not entitled to relief on this claim.[2]

Because there is no merit to this claim, Mr. Murdison did not provide ineffective assistance of counsel. See Strickland, 466 U.S. at 688, 694; Nyhuis, 211 F.3d at 1344.

### 6. Petitioner Did Not Receive Constitutionally Ineffective Assistance of Appellate Counsel.

As explained in detail above, none of Petitioner's grounds for relief have merit, and therefore Mr. Murdison did not provide ineffective assistance of counsel by failing to raise

---

[2]In any event, Chief Judge Hall varied upward from the advisory Guidelines range, finding "that a sentence outside of the advisory range is appropriate," and sentenced Petitioner to the statutory maximum of ten years. Sent. Tr. 86-87; CR 112-253, doc. nos. 4, 75.

them on appeal.  See Strickland, 466 U.S. at 688, 694; Nyhuis, 211 F.3d at 1344.

Accordingly, Petitioner is not entitled to relief on Ground Eight.

**III.    CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 11th day of August, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA